1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

WESTERN DISTRICT OF WASHINGTON

10

AT SEATTLE

11

SCOTTSDALE INSURANCE COMPANY,

Case No. 24-cv-01518

12

Plaintiff,

13

v.

COMPLAINT FOR DECLARATORY
JUDGMENT

14

THERAPEUTIC HEALTH SERVICES

15

Defendant.

16
17

For its Complaint for Declaratory Judgment against Defendant Therapeutic Health

18

Services ("THS" or "Defendant"), Scottsdale Insurance Company ("Scottsdale") alleges as

19

follows:

20

**NATURE OF THE CASE**

21

1.      This is an insurance coverage dispute arising out of an insurance policy (the

22

"Policy") issued by Scottsdale to THS.

23

2.      Between August 5, 2024 and August 9, 2024, THS was named as a defendant in

24

four similar class action lawsuits (the "Underlying Lawsuits") filed by Nicole Kersey, Casey

25

Saputo, Xandra Abram, and Jacqueline Reynolds (collectively, the "Underlying Plaintiffs"),

26

individually and on behalf of a putative class of similarly situated individuals.

---

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 1

380 105757 4855-4059-9270.v1

3.      According to the Underlying Plaintiffs, on February 26, 2024, THS identified suspicious activity in its network and discovered that cybercriminals had accessed and stolen private information of patients and employees, including names, Social Security numbers, dates of birth, and medical treatment information (the "Data Breach").

4.      THS has sought coverage from Scottsdale for the Underlying Lawsuits under the Policy.

5.      By letter dated September 16, 2024, Scottsdale advised THS that no coverage is available for the Underlying Lawsuits under the Policy, but that Scottsdale would provide a defense to THS in response to the Underlying Lawsuits subject to various terms, conditions, and reservations, including Scottsdale's right to seek a judicial declaration regarding its coverage obligations with respect to the Underlying Lawsuits.

6.      THS disputes Scottsdale's denial of coverage for the Underlying Lawsuits under the Policy.

7.      By this lawsuit, Scottsdale seeks a declaration that the Policy does not afford any coverage to THS for the Underlying Lawsuits, the Data Breach, or any other or future claim, damages, or injury arising out of the Date Breach (collectively, the "Underlying Matters").

## PARTIES

8.      Scottsdale is an Ohio corporation with its principal place of business in Scottsdale, Arizona.

9.      Upon information and belief, THS is a Washington non-profit organization, with its principal place of business in Seattle, Washington.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Scottsdale and THS and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 2

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270.v1

1      11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial

2  part of the events or omissions giving rise to the claim occurred in this judicial district.

### FACTUAL ALLEGATIONS

#### *The Policy*

12.     Scottsdale issued the Policy—Common Policy No. OPS1586443—to THS for the "Policy Period" from October 12, 2023 to October 12, 2024.  A true and accurate copy of the Policy is attached hereto as Exhibit 1.

13.     The Policy includes the following Coverage Parts: (a) Commercial General Liability Coverage Part ("CGL Coverage Part"), (b) Professional Liability Coverage Part ("PL Coverage Part"), and (c) Directors and Officers Liability Including Entity Reimbursement and Entity Liability Coverage Part ("D&O Coverage Part").

**A.    *CGL Coverage Part***

14.     Subject to its terms, conditions, exclusions, and other provisions, the CGL Coverage Part affords coverage under the following potentially relevant Insuring Agreements: Coverage A – Bodily Injury and Property Damage Liability ("Coverage A") and Coverage B – Personal and Advertising Injury Liability ("Coverage B").

15.     The Insuring Agreement for Coverage A provides, in relevant part, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Policy, CGL Coverage Part, § A.1.a.).

16.     The Insuring Agreement for Coverage B provides, in relevant part, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 3

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270 .v1

1

2

3

4

> against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

(Policy, CGL Coverage Part, § B.1.a.).

5

6

7

8

17.    The CGL Coverage Part, as modified by the General Liability Extensions Endorsement, defines "Bodily injury" to mean "bodily injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these." (Policy, CGL Coverage Part, §VI.3., amended by General Liability Extensions Endorsement, CLS-421s (4-15)).

9

10

18.    The CGL Coverage Part defines "property damage" to mean:

11

12

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

13

14

> b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

15

> For the purposes of this insurance, electronic data is not tangible property.

16

17

18

> As used in this definition, electronic data means information, facts, or programs stored as or on, created or used on, or transmitted or to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

19

(Policy, CGL Coverage Part, §VI.17.).

20

21

22

23

19.    "Personal and advertising injury" is defined under the CGL Coverage Part to mean "injury, including consequential 'bodily injury,' arising out of," among other things, "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." (Policy, CGL Coverage Part, § IV.14.).

24

25

26

20.    Coverage under the CGL Coverage Part is subject to an "Exclusion – Access or Disclosure of Confidential or Personal Information and Data-related Liability–Limited Bodily Injury Exception Not Included" Endorsement ("Data Breach Endorsement"), which amends

---

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 4

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270 .v1

Section 2.p. of Coverage A of the CGL Coverage Part and adds an additional exclusion to Section 2. of Coverage B of the CGL Coverage Part (the "Confidential Information Exclusions").

21.     The Confidential Information Exclusion applicable to Coverage A provides that this insurance does not apply to "Damages arising out of":

> (1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or
>
> (2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.
>
> This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.
>
> As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

(Policy, CGL Coverage Part, Data Breach Endorsement).

22.     The Confidential Information Exclusion applicable to Coverage B provides that "this insurance does not apply to":

> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.
>
> This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(Policy, CGL Coverage Part, Data Breach Endorsement).

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 5

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270 .v1

**B.      PL Coverage Part**

23.      The primary Insuring Agreement to the PL Coverage Part ("Primary Insuring Agreement") provides in relevant part as follows:

> We will pay those sums that the insured becomes legally obligated to pay as **DAMAGES** because of injury as a result of a **WRONGFUL ACT**. This insurance applies to injury only if **CLAIM** for **DAMAGES** because of the injury is first made against the insured during the **POLICY PERIOD** or any Extended Reporting Period, if applicable.

(Policy, PL Coverage Part, §I) (bold in orig.).

24.      The PL Coverage Part includes the following defined terms:

> **CLAIM(S)** means the receipt of a demand for money or services naming any insured and alleging a **WRONGFUL ACT**.
>
> **DAMAGES** means a monetary judgment, award or settlement, but does not include restitution, fines or statutory penalties whether imposed by law or otherwise. **DAMAGES** covered under this policy will not include monies paid to you as fees or expenses for professional services rendered which are to be reimbursed or disclaimed as a part of the judgment or settlement.
>
> **WRONGFUL ACT(S)** means any act, error or omission in the furnishing of professional health care services. It includes the furnishing of food, beverages, medications or appliances in connection with those services. Any **WRONGFUL ACTS** committed in the furnishing of professional health care services to any one person shall be considered one **WRONGFUL ACT**.

(Policy, PL Coverage Part, §VII) (bold in orig.).

25.      The PL Coverage Part is amended by a Privacy Breach and Security Breach Coverage Endorsement to include the following additional Insuring Agreements: (a) Insuring Agreement—Privacy Breach or Security Breach ("Privacy Breach Insuring Agreement"), and (b) Insuring Agreement—Direct Loss ("Direct Loss Insuring Agreement").

26.      The Privacy Breach Insuring Agreement provides, in relevant part, as follows:

> We will pay **DAMAGES** which the insured becomes legally obligated to pay as a result of **CLAIM(S)** (as defined in this endorsement) first made against the insured during the **POLICY PERIOD** or any Extended

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 6

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270 .v1

Reporting Period, if applicable, provided that:

**a.** You provide us with notification of a **PRIVACY BREACH** or a **SECURITY BREACH** within five business days of the **DATE OF DISCOVERY;**

**b.** The **WRONGFUL ACT** (as defined in this endorsement) giving rise to the **CLAIM** first occurred on or after the Retroactive Date shown in the Declarations and before the end of the **POLICY PERIOD;**

**c.** Notice of the **WRONGFUL ACT** or any resulting **CLAIM** was not given nor required to be given to any prior insurer;

**d.** Prior to the inception date of the first policy issued to you by us and continuously renewed by us, you had no reasonable basis to believe that such **WRONGFUL ACT** had occurred or that a **CLAIM** would be made against you alleging such **WRONGFUL ACT;** and

**e.** All **CLAIMS** arising out of the same **WRONGFUL ACT** shall be considered as having been made at the time the first **CLAIM** is made.

(Policy, PL Coverage Part, Privacy Breach and Security Breach Coverage Endorsement, §I.A.) (bold in orig.).

27.    The Direct Loss Insuring Agreement provides, in relevant part, as follows: "In addition to the Limits of Insurance, we will reimburse you for [certain specified costs], but only if you provide us with notification of the **PRIVACY BREACH** or the **SECURITY BREACH** within five business days of the **DATE OF DISCOVERY** . . . ." (Policy, PL Coverage Part, Privacy Breach and Security Breach Coverage Endorsement, §I.B.) (bold in orig.).

28.    Section V.B.1. of the Privacy Breach and Security Breach Coverage Endorsement further provides, in relevant part, as follows:

**1. DUTIES IN THE EVENT OF A PRIVACY BREACH OR SECURITY BREACH:**

If, during the **POLICY PERIOD** or Extended Reporting Period, if applicable you first are made aware of an actual or alleged **PRIVACY BREACH** or **SECURITY BREACH,** you must:

**a.** Provide us with notification within five business days of the **DATE**

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 7

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270 .v1

**OF DISCOVERY,** including:

**(1)** How and when you first became aware of the **PRIVACY BREACH** or **SECURITY BREACH;** and

**(2)** All details known at the time regarding the **PRIVACY BREACH** or **SECURITY BREACH;**

**b.** Immediately upon discovery of a **SECURITY BREACH,** or a potential **SECURITY BREACH** you must take all reasonable steps to protect **COMPUTER SYSTEMS** and the **DATA** stored therein;

**c.** Provide or authorize us to obtain any information, records, vendor or systems data required; and

**d.** Cooperate with and assist us in the **PRIVACY BREACH** or **SECURITY BREACH** investigation, remediation and notification process.

These requirements must be met in order for the policy to respond to any subsequent **CLAIM** or **DIRECT LOSS** resulting from such **PRIVACY BREACH** or **SECURITY BREACH.**

No **INSUREDS** will, except at their own cost and with no liability to us, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

(Policy, PL Coverage Part, Privacy Breach and Security Breach Coverage Endorsement, §V.B.1.) (bold in orig.).

29.     The Privacy Breach and Security Breach Coverage Endorsement contains the following other insurance provision, which provides in relevant part that:

**2.** Excess Insurance

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis.

When this insurance is excess, we will have no duty to defend any **CLAIM** or **SUIT** that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**a.** The total amount that all such other insurance would pay for the

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 8

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270 .v1

loss in the absence of this insurance; and

**b.** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Professional Liability Coverage Part Supplemental Declarations.

(Policy, PL Coverage Part, Privacy Breach and Security Breach Coverage Endorsement, §VI.) (bold in orig.).

      30.   The Privacy Breach and Security Breach Coverage Endorsement includes the following defined terms:

**CLAIM(S)** means an oral or written notice from any party that it is their intention to hold **YOU** responsible for injury as a result of a **WRONGFUL ACT.** Notice includes, but is not limited to, **SUIT.**

**WRONGFUL ACT(S)** means a **PRIVACY BREACH** or a **SECURITY BREACH.**

**DATA** means **PERSONALLY IDENTIFIABLE INFORMATION** and **PROTECTED HEALTH INFORMATION.**

**DATE OF DISCOVERY** means:

**1.** The date you first discover you suffered a **PRIVACY BREACH** or **SECURITY BREACH** or the date you first become aware of facts that would cause a reasonable person to assume a **PRIVACY BREACH** or **SECURITY BREACH** has occurred, whichever is earlier.

**2.** If you are not aware that you have suffered a **PRIVACY BREACH** or **SECURITY BREACH** until you receive notice of an actual or potential **CLAIM,** and that notice includes allegations that if true, would cause a reasonable person to assume a **PRIVACY BREACH** or **SECURITY BREACH** has occurred, then the date the notice is received, is the **DATE OF DISCOVERY.**

**PRIVACY BREACH** means the insured's failure to prevent the unauthorized access to or unauthorized dissemination of **DATA** by any means other than through your **COMPUTER SYSTEM** and includes any event for which you are required to provide notice to the Secretary of the U.S. Department of Health and Human Services, the Federal Trade

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 9

Commission and/or prominent news media outlets serving the insured's state or jurisdiction as required by the Health Insurance Portability and Accountability Act (HIPAA) and any amendments thereto.

**SECURITY BREACH** means:

1. The insured's failure to:

   **a.** Prevent unauthorized access to **COMPUTER SYSTEMS,** and **DATA** stored therein, or to your **DATA,** stored on computer systems owned, leased or licensed by others with whom you have contractually agreed to store and maintain your **DATA** on your behalf;

   **b.** Prevent the transmission or insertion of a virus, malicious code or other malicious software to a third party's computer system;

   **c.** Allow authorized access to **COMPUTER SYSTEMS** and **DATA** stored therein, also referred to as denial of service; or

   **d.** Prevent the theft, loss, or disappearance of any computer hardware, component or mobile computer or devices meeting the definition of **COMPUTER SYSTEMS,** on which **DATA** has been stored.

2. **SECURITY BREACH** includes any event arising out of **COMPUTER SYSTEMS** for which you are required to provide notice to the Secretary of the U.S. Department of Health and Human Services, the Federal Trade Commission and/or prominent news media outlets serving the insured's state or jurisdiction as required by the Health Insurance Portability and Accountability Act (HIPAA) and any amendments thereto.

   **DIRECT LOSS** means costs you incur as a result of a **PRIVACY BREACH** or **SECURITY BREACH** as specified and reimbursable under **INSURING AGREEMENT—DIRECT LOSS.**

(Policy, PL Coverage Part, Privacy Breach and Security Breach Coverage Endorsement, §§VII. & VIII.) (bold in orig.).

### C.     *D&O Coverage Part*

31.     The Insuring Agreement to the D&O Coverage Part, as modified by the Limited Retroactive Date Endorsement, provides in relevant part as follows:

The Company will pay on behalf of the **INDIVIDUAL INSURED(S)** and/or the **ENTITY**, in accordance with the terms, conditions and

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 10

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270 .v1

exclusions of the Coverage Part, **DAMAGES** which the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** shall become legally obligated to pay by reason of any **CLAIM(S)** made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** as the result of a **WRONGFUL ACT**, provided that:

(1)    the **WRONGFUL ACT** was committed by the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** on or after the Retroactive Date listed in (B) below and prior to the end of the **POLICY PERIOD**;

(2)    the **CLAIM** is first made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** during the **POLICY PERIOD**; and

(3)    written notice is given to the Company during the **POLICY PERIOD** or the Extended Reporting Period (if applicable).

(Policy, D&O Coverage Part, §I., as amended by the Limited Retroactive Date Endorsement) (bold in orig.).

32.    The D&O Coverage Part includes the following defined terms:

**CLAIM(S)** means an oral or written notice from any party that it is their intention to hold an **INSURED** responsible for any **WRONGFUL ACT**. **CLAIM** also means knowledge by any **INSURED** which could reasonably be expected to give rise to such notice. The **INSURED** must tell us of such **CLAIM(S)** or circumstances in writing during the **POLICY PERIOD** or Extended Reporting Period, if applicable. Notice includes, but is not limited to, service of suit or institution of arbitration proceedings.

**WRONGFUL ACT** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by one or more of the **INSURED(S)** while acting within the scope of their individual or collective capacities, subject to the terms, conditions and limitations of this Coverage Part.

(Policy, D&O Coverage Part, §III.) (bold in orig.).

**DAMAGES** means a monetary judgment, award or settlement which the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** are legally obligated to pay arising from a covered **CLAIM** unless uninsurable under the law pursuant to which this Policy shall be construed.

**DAMAGES** shall not include:

(1) Civil or Criminal fines, sanctions, restitution or statutory penalties whether pursuant to any civil or criminal law or statute;

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 11

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270 .v1

1

2   (2) Amounts paid to the **INSURED** as fees, costs or expenses for services
3       performed which are to be reimbursed or discharged as part of the
        judgment or settlement;

4
5   (3) Taxes;

6   (4) Equitable relief, injunctive relief, declaratory relief or any other relief
        or recovery that is not seeking monetary judgment, award or settlement;

7   (5) Any fees, costs or expenses, including but not limited to
8       claimant/plaintiff attorney fees, related to equitable relief, injunctive
        relief, declaratory relief or any other relief or recovery that is not seeking
9       a monetary judgment, award or settlement; or

10  (6) **CLAIM EXPENSE.**

11
    (Policy, D&O Coverage Part, §III., as amended by the Definition of Damages Amendatory
12
    Endorsement) (bold in orig.).

13
          33.     The D&O Coverage Part includes the following exclusion:
14                The Company shall not be obligated to make any payment or defend any
                  lawsuit in connection with any **CLAIM** made against the **INDIVIDUAL**
15                **INSURED(S)** and/or the **ENTITY**:
                                                  ***
16                (F) which is insured by another valid Coverage Part(s) or policies;

17
    (Policy, D&O Coverage Part, §IV.) (bold in orig.).
18
                                  *The Underlying Lawsuits*
19
          34.     Between August 5, 2024 and August 9, 2024, THS was named as a defendant in
20
    the following Underlying Lawsuits:  (a) *Nicole Kersey v. Therapeutic Health Services*, Case No.
21
    24-2-17679-9, King County Superior Court, Washington; (b) *Casey Saputo v. Therapeutic Health*
22
    *Services*, Case No. 24-2-17796-5, King County Superior Court, Washington; (c) *Xandra Abram v.*
23
    *Therapeutic Health Services*, Case No. 24-2-17795-0, King County Superior Court, Washington;
24
    and (d) *Jacqueline Reynolds v. Therapeutic Health Services*, Case No. 24-2-18090-7, King County
25
    Superior Court, Washington.  True and accurate copies of the complaints filed in the Underlying
26
    Lawsuits (the "Underlying Complaints") are attached hereto as Exhibit 2.

---

COMPLAINT FOR DECLARATORY JUDGMENT                    SELMAN LEICHENGER EDSON
Case No.: 24-cv-01518 - 12                            HSU NEWMAN & MOORE LLP
                                                      600 University Street, Suite 2305
                                                      Seattle, WA 98101
                                                      T: 206.447.6461

380 105757 4855-4059-9270 .v1

35.     According to the Underlying Complaints, THS discovered the Date Breach on February 26, 2024, when it identified suspicious activity in its network and discovered that cybercriminals had accessed and stolen private information of patients and employees, including names, Social Security numbers, dates of birth, and medical treatment information.   The Underlying Plaintiffs allege that more than 14,000 individuals may have had their private and confidential information accessed in the Data Breach.

36.     The Underlying Plaintiffs contend that THS failed to properly safeguard its computer systems and data, failed to implement adequate security measures and practices that would have prevented the Data Breach, and failed to notify victims of the Data Breach until July 18, 2024, when it sent a notice letter disclosing the Data Breach to potential victims.

37.     The Underlying Complaints variously set forth causes of action against THS for: (1) negligence; (2) negligence per se; (3) breach of implied contract; (4) invasion of privacy; (5) unjust enrichment; (6) violation of the Washington Consumer Protection Act; (7) violation of the Washington Data Breach Disclosure Law; (8) violation of the Washington Uniform Healthcare Information Act; and (9) breach of fiduciary duty.

### *The Markel Policy*

38.     THS tendered notice of the Data Breach and subsequently tendered notice of the Underlying Lawsuits to Markel/Evanston Insurance Company ("Markel") under Cyber 360 Insurance Policy No. MKLV1PCY000085 (the "Markel Policy").

39.     Markel recognized coverage for the Data Breach under the Markel Policy and has reimbursed THS for sums it has incurred in connection with the Data Breach.  Additionally, Markel has appointed defense counsel to represent THS in response to the Underlying Lawsuits, subject to the limit of liability and other terms, conditions, and provisions of the Markel Policy.

### *The Coverage Dispute*

40.     On or about August 16, 2024, THS first notified Scottsdale of the Data Breach when it submitted the Underlying Complaints to Scottsdale for coverage under the Policy.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 13

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270.v1

41.     By letter dated September 16, 2024, Scottsdale advised THS that no coverage is available for the Underlying Lawsuits under the Policy. A true and accurate copy of Scottsdale's September 16, 2024 letter is attached hereto as Exhibit 3.

42.     In particular, Scottsdale's September 16, 2024 letter advised THS that the Confidential Information Exclusions in the Data Breach Endorsement fully precludes coverage for the Underlying Lawsuits under the CGL Coverage Part of the Policy.

43.     Scottsdale's September 16, 2024 coverage letter also advised THS that no coverage is available for the Underlying Lawsuits under the PL Coverage Part of the Policy because (a) the Underlying Lawsuits do not fall within the scope of the Primary Insuring Agreement, and (b) THS did not provide notice of the Data Breach within five business days of the Date of Discovery, as required by the Privacy Breach and Security Breach Coverage Endorsement, so as to trigger coverage under either the Privacy Breach Insuring Agreement or the Direct Loss Insuring Agreement.

44.     Scottsdale's September 16, 2024 letter additionally advised THS that no coverage is available for the Underlying Lawsuits under the D&O Coverage Part of the Policy because the Underlying Lawsuits constitute a "Claim made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** which is insured by another valid Coverage Part(s) or policies."

45.     Scottsdale raised other partial and potential coverage issues and defenses that may further apply to limit or bar coverage for the Underlying Lawsuits under the Policy, and it also fully reserved all of its other rights and defenses under the Policy and applicable law.

46.     Notwithstanding its full denial of coverage for the Underlying Lawsuits under the Policy, Scottsdale agreed to provisionally recognize a defense for THS in response to the Underlying Lawsuits subject to, among other things, a judicial declaration as to Scottsdale's coverage obligations under the Policy with respect to the Underlying Lawsuits.

47.     THS continues to seek coverage for the Underlying Lawsuits under the Policy.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 14

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270.v1

1    48.    Scottsdale now seeks a declaration that it has no coverage or defense obligations

2    under the Policy with respect to the Underlying Matters.

3    **COUNT I: DECLARATORY JUDGMENT (CGL COVERAGE PART)**

4    49.    Scottsdale repeats and realleges the allegations contained in paragraphs 1 through

5    48, inclusive, as if fully set forth herein.

6    50.    With respect to the CGL Coverage Part, the Confidential Information Exclusions

7    in the Data Breach Endorsement provide that this insurance does not apply to "Damages" or

8    "Personal and advertising injury" arising out of, among other things, "[a]ny access to or disclosure

9    of any person's or organization's confidential or personal information, including . . . customer

10   lists, financial information, credit card information, health information or any other type of

11   nonpublic information. . . ."  By its plain terms, the Confidential Information Exclusions apply

12   "even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses,

13   public relations expenses or any other loss, cost or expense incurred by you or others arising out

14   of" such access or disclosure.

15   51.    The Underlying Matters are premised on allegations that cybercriminals gained

16   access to the Underlying Plaintiffs' and others' personal and confidential information which was

17   in the possession of THS, including names, Social Security numbers, dates of birth, and medical

18   treatment information.

19   52.    As the Underlying Matters arise out of "any access to or disclosure of any person's

20   or organization's confidential or personal information," they are fully precluded from coverage

21   under the CGL Coverage Part by the Confidential Information Exclusions in the Data Breach

22   Endorsement.

23   53.    An actual, present, and justiciable controversy exists concerning coverage for the

24   Underlying Matters under the CGL Coverage Part.

25   54.    The entry of a declaratory judgment with respect to coverage regarding the

26   Underlying Matters, particularly as to application of the Confidential Information Exclusions in

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 15

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

the Data Breach Endorsement to the CGL Coverage Part, is necessary and would be effective to resolve the controversy between the parties.

55.     Accordingly, Scottsdale respectfully requests that the Court enter judgment declaring that no coverage is available for the Underlying Matters under the CGL Coverage Part of the Policy and that Scottsdale does not have any coverage or defense obligations with respect to the Underlying Matters under the CGL Coverage Part.

<u>**COUNT II: DECLARATORY JUDGMENT (PL COVERAGE PART)**</u>

56.     Scottsdale repeats and realleges the allegations contained in paragraphs 1 through 55, inclusive, as if fully set forth herein.

57.     Coverage under the Primary Insuring Agreement to the PL Coverage Part is only available for "sums that the insured becomes legally obligated to pay as **DAMAGES** because of injury as a result of a **WRONGFUL ACT**."  For purposes of the Primary Insuring Agreement, "**WRONGFUL ACT(S)** means any act, error or omission in the furnishing of professional health care services. It includes the furnishing of food, beverages, medications or appliances in connection with those services."

58.     The Underlying Plaintiffs' alleged injuries did not result from an act, error, or omission by THS "in the furnishing of" professional healthcare services, or its furnishing of food, beverages, medications or appliances in connection with any such services.  Rather, the Underlying Plaintiffs allege that they and others sustained injuries as a result of THS' failure to properly protect and safeguard Plaintiffs' personal and confidential information from the Data Breach and from THS' alleged failure to provide notice of the Data Breach in a timely manner.

59.     As a result, the Underlying Lawsuits do not fall within the scope of the Primary Insuring Agreement.

60.     The Privacy Breach Insuring Agreement and the Direct Loss Insuring Agreement in the Privacy Breach and Security Breach Coverage Endorsement expand the coverage originally

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 16

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270.v1

1  provided under the PL Coverage Part by amending the definition of **WRONGFUL ACT** to

2  include a **PRIVACY BREACH** or a **SECURITY BREACH**.

3       61.    While the Underlying Lawsuits resulted from a **PRIVACY BREACH** or a

4  **SECURITY BREACH**, the Privacy Breach Insuring Agreement and the Direct Loss Insuring

5  Agreement both require that THS provide Scottsdale "with notification of the **PRIVACY**

6  **BREACH** or the **SECURITY BREACH** within five business days of the **DATE OF**

7  **DISCOVERY**."  The Privacy Breach and Security Breach Coverage Endorsement further amends

8  Section VI.B. of the PL Coverage Part to provide that "[i]f, during the **POLICY PERIOD** or

9  **EXTENDED REPORTING PERIOD**, if applicable you first are made aware of an actual or

10  alleged **PRIVACY BREACH** or **SECURITY BREACH**, you must:  a. Provide us with

11  notification within five business days of the **DATE OF DISCOVERY** . . . ."  That Section

12  explicitly provides that "[t]hese requirements must be met in order for the policy to respond to any

13  subsequent **CLAIM** or **DIRECT LOSS** resulting from such **PRIVACY BREACH** or

14  **SECURITY BREACH**."

15       62.    On or about February 26, 2024, THS first learned that it had suffered a **PRIVACY**

16  **BREACH** or **SECURITY BREACH** or, at a minimum, "became aware of facts that would cause

17  a reasonable person to assume a **PRIVACY BREACH** or **SECURITY BREACH** has occurred."

18  Thus, THS was required to notify Scottsdale of such **PRIVACY BREACH** or **SECURITY**

19  **BREACH** within five business days of February 26, 2024.

20       63.    THS first notified Scottsdale of the **PRIVACY BREACH** or **SECURITY**

21  **BREACH** on August 16, 2024.

22       64.    As the Underlying Lawsuits resulted from a **PRIVACY BREACH** or **SECURITY**

23  **BREACH** that was not reported to Scottsdale within five business days of the **DATE OF**

24  **DISCOVERY,** neither the **PRIVACY BREACH** or **SECURITY BREACH** nor the Underlying

25  Lawsuits falls within the scope of coverage of the Privacy Breach Insuring Agreement or the Direct

26  Loss Insuring Agreement.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 17

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270 .v1

65.    An actual, present, and justiciable controversy exists concerning coverage for the Underlying Matters under the PL Coverage Part.

66.    The entry of a declaratory judgment with respect to coverage regarding the Underlying Matters, particularly as to whether they fall within the scope of coverage of the Primary Insuring Agreement, Privacy Breach Insuring Agreement or the Direct Loss Insuring Agreement to the PL Coverage Part, is necessary and would be effective to resolve the controversy between the parties.

67.    Accordingly, Scottsdale respectfully requests that the Court enter judgment declaring that no coverage is available for the Underlying Matters under the PL Coverage Part of the Policy and that Scottsdale does not have any coverage or defense obligations with respect to the Underlying Matters under the PL Coverage Part.

## COUNT III: DECLARATORY JUDGMENT (D&O COVERAGE PART)

68.    Scottsdale repeats and realleges the allegations contained in paragraphs 1 through 67, inclusive, as if fully set forth herein.

69.    Section IV(F) of the D&O Coverage Part provides that Scottsdale "shall not be obligated to make any payment or defend any lawsuit in connection with any **CLAIM** made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** . . . which is insured by another valid Coverage Part(s) or policies."

70.    THS reported the Data Breach to Markel for coverage under the Markel Policy, the Markel Policy responded to the Data Breach, and Markel has recognized coverage for the Underlying Lawsuits, subject to the Markel Policy's limit of liability.

71.    In addition, coverage would have been available for the Underlying Lawsuits under the PL Coverage Part had the Insureds timely reported the Data Breach to Scottsdale in accordance with the terms of the Privacy Breach and Security Breach Coverage Endorsement.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 18

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

72.     Notwithstanding the Markel Policy's limit of liability or the lack of coverage under the PL Coverage Part due to THS' failure to provide timely notice of the Data Breach to Scottsdale, the Underlying Lawsuits are "insured by another valid Coverage Part(s) or policies."

73.     As a result, the Underlying Lawsuits are fully precluded from coverage under the D&O Coverage Part.

74.     An actual, present, and justiciable controversy exists concerning coverage for the Underlying Matters under the D&O Coverage Part.

75.     The entry of a declaratory judgment with respect to coverage regarding the Underlying Lawsuits, particularly as to whether they are excluded by Section IV(F) of the D&O Coverage Part, is necessary and would be effective to resolve the controversy between the parties.

76.     Accordingly, Scottsdale respectfully requests that the Court enter judgment declaring that no coverage is available for the Underlying Lawsuits under the D&O Coverage Part of the Policy and that Scottsdale does not have any coverage or defense obligations with respect to the Underlying Lawsuits under the D&O Coverage Part.

*     *     *

77.     The filing of this Complaint is not intended to and does not constitute a waiver of any of Scottsdale's rights, remedies, and defenses under the Policy or at law.  Additional conditions, limitations, and exclusions of the Policy may exclude or limit coverage for the Underlying Lawsuits.

### PRAYER FOR RELIEF

**WHEREFORE**, Scottsdale prays that this Court enter an Order:

1. Declaring that the Underlying Matters are fully excluded from coverage under the CGL Coverage Part by virtue of, among other things, the Confidential Information Exclusions in the Data Breach Endorsement to the CGL Coverage Part and, as a result, Scottsdale has no duty to defend or indemnify THS under the Policy in connection with the Underlying Matters;

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270.v1

2. Declaring that the Underlying Lawsuits are fully excluded from coverage under the PL Coverage Part because, among other things, they do not fall within the scope of coverage of the Primary Insuring Agreement, Privacy Breach Insuring Agreement or the Direct Loss Insuring Agreement to the PL Coverage Part and, as a result, Scottsdale has no duty to defend or indemnify THS under the Policy in connection with the Underlying Matters;

3. Declaring that the Underlying Matters are fully excluded from coverage under the D&O Coverage Part by virtue of, among other things, Section IV(F) of the D&O Coverage Part and, as a result, Scottsdale has no duty to defend or indemnify THS under the Policy in connection with the Underlying Matters;

4. Awarding Scottsdale its costs, expenses, and attorneys' fees together with pre- and post-judgment interest to the greatest extent allowed by law; and

5. Awarding Scottsdale all other relief that the Court deems just and equitable.


DATED:  September 23, 2024


By:  *s/ Justin Landreth*
Justin Landreth, WSBA# 44849
SELMAN LEICHENGER EDSON HSU
NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
Telephone: 206.447.6461
jlandreth@selmanlaw.com
*Attorneys for Plaintiff SCOTTSDALE*
*INSURANCE COMPANY*

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 24-cv-01518 - 20

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

380 105757 4855-4059-9270 .v1